WISE & COOPER CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 21178.   Promulgated May 19, 1930.

*Manton M. Wyvell, Esq.*, for the petitioner.
*A. H. Fast, Esq.*, for the respondent.

OPINION.

ARUNDELL: The petitioner is claiming the benefits of section 328 of the Revenue Act of 1918 on the ground that the established facts are within the provisions of subdivisions (a), (c), and (d) of section 327 of the Act.

It is contended that sums expended before 1906 by the partnership in advertising, and thereafter by the petitioner for buildings, land, and advertising, were charged to expense instead of being capitalized, and since the records reflecting the expenditures are not available, invested capital can not be determined.

Proof was made that between the time of its incorporation and the taxable period, petitioner expended an aggregate of not to exceed $22,000 for the acquisition of a factory, additions thereto, and adjoining vacant lots, all of which was charged to expense and has never been capitalized. These are clearly capital items, but as we are not aware of the amount of invested capital computed by the respondent or the items he included and excluded, save for his exclusion of any amount for good will, we do not know as a fact whether these costs have or have not been taken into consideration in computing invested capital. Some of the items are exhaustible assets, yet we have not been informed as to their life and therefore do not know whether any of such assets had any value in the taxable period for invested capital purposes. As we said in *Edwin M. Knowles China Co.*, 9 B. T. A. 1292:

> The special relief given by sections 327 and 328 of the Act was not intended for those taxpayers whose invested capital is small in amount merely because they have not taken the trouble to establish the larger amount to which they are really entitled.

As to the remaining contention under subdivision (a), all we know is that " quite a substantial amount " of money was expended by the partnership and the petitioner for advertising. No attempt was made to show what proportion of the whole amount spent was expended to create future sales. It may be that some part of the unknown sum expended did result in establishing petitioner's produce in the minds of the public and thus create a capital asset, but it is also apparent that a portion was used to bring about current sales. Without more facts than those before us we can not say that any part of the amount spent should be capitalized, and, therefore, be considered in computing invested capital.

In our opinion the petitioner has failed to show that its invested capital can not be determined.

The evidence here is that upon the organization of the petitioner in 1906 it received in exchange for $85,000 par value of its stock, the partnership business of Wise & Cooper, the appraised value of whose tangible assets at the time of exchange was $85,000. No evidence was offered as to the value of the partnership's good will or other intangible assets, but we are called upon to find a valuable good will on the scant evidence that " quite a substantial amount " was expended for advertising and the salesmen were instructed to talk up the name of Wise & Cooper. The value of the tangibles taken over by petitioner is known. Before subdivision (c) of section 327 may be availed of there must be at least some showing that intangibles of a substantial value were taken over by petitioner. The evidence does not convince us that such is the case.

Neither do we find any evidence in the record to justify the allowance of special assessment because of the existence of abnormalities affecting the petitioner's capital or income in the taxable year. Petitioner's income apparently comes solely from an increase in the volume of its sales. Nor do we find an abnormality in petitioner's capital. Proof of the fact that about $22,000 expended for capital assets was charged to expense instead of being capitalized tends to establish petitioner's correct invested capital rather than to prove the existence of an abnormality affecting capital or income, and, as we have already pointed out, we do not know as a fact whether or not this amount was included by the respondent in his determination of petitioner's invested capital. It may well be that some part of the amount petitioner spent for advertising resulted in the creation of a good will asset. But there is nothing before us from which to conclude that any good will so established was such as to bring about an abnormal condition. *Clemson Bros., Inc.*, 15 B. T. A. 1145, 1154. So far as the record discloses, such good will as may have been created did not amount to more than that which would naturally result from consistent advertising by an ordinary well managed concern.

The case of *Woodbury Shoe Co.*, 19 B. T. A. 433, so much relied on by petitioner, is not controlling. That case, like all so-called special assessment cases, stands on its own peculiar facts. There the evidence was clearer and more compelling. The value of the good will in the *Woodbury* case was established by competent evidence, considerable sums of borrowed money were used in the business, and various factors appeared which all taken together induced the conclusion.

*Decision will be entered for the respondent.*